NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CARPENTERS DISTRICT COUNCIL OF
KANSAS CITY AND VICINITY,
Respondent.

No. 19001.

United States Court of Appeals,
Eighth Circuit.

March 15, 1971.

Seth D. Rosen, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Herbert Fishgold, Attys., N. L. R. B., Washington, D. C., for petitioner.

Charles A. Werner, St. Louis, Mo., Gibson Langsdale, Kansas City, Mo., for Carpenters' District Council of Kansas City and Vicinity, AFL–CIO.

Before VAN OOSTERHOUT and HEANEY, Circuit Judges, and HANSON, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This case is before us upon the petition of the National Labor Relations Board for enforcement of its order issued against Carpenters District Council of Kansas City and Vicinity, AFL–CIO (the Union) on May 25, 1966 (reported at 158 NLRB 1101), and reaffirmed in a supplemental decision and order of the Board filed August 15, 1969 (reported at 178 NLRB No. 17), following proceedings after remand of the case by us to the Board by our decision reported at 398 F.2d 11.

In both orders, the Board finds the Union guilty of the unfair labor practice proscribed by § 8(b) (4) (i) and (ii) (B) of the National Labor Relations Act as amended, 29 U.S.C.A. § 151 et seq. (secondary boycott). The issue presented is whether the Board's findings are supported by substantial evidence on the record as a whole.

The facts are fully and fairly stated in our prior opinion and the two reported Board decisions. We will briefly summarize the background facts. The present controversy arises out of three 1965 building projects in the Kansas City area. The material facts relating to each project are substantially the same. In each instance, the general contractor employed to erect the building subcontracted the manufacture, transportation to the building site and installation of concrete wall panels and other concrete fabrications to a masonry subcontractor. The general contractor and some subcontractors employed carpenters on the building project. The masonry subcontractor employed no carpenters on its installation crew. At each jobsite, the Union representative approached the general contractor and informed him that the carpenters would walk off the job unless the masonry subcontractors would employ a carpenter on their installation crew. When no carpenter was added to the masonry crew, the carpenters employed by the general contractor and by some subcontractors walked off the job and remained off the job three to five weeks. There was no picketing.

A few days later, a Union representative informed the general contractor that he would put the men back to work if a carpenter was added to the masonry crew. When the general contractor pointed out that the employees of the installation crew were not his employees but were employees of the masonry subcontractors, the Union representative responded that the general contractor controlled the job and could force the subcontractors to comply with the Union's request. Additional pertinent facts to the extent necessary will be developed during the course of the opinion.

When the case was previously before us for enforcement of the Board's order, we determined the record was not sufficiently complete to permit a determination of whether the Union had a valid claim to the disputed work because of the absence of proof of the contents of the existing collective bargaining agreement and lack of evidence as to area practice with respect to the work claimed by the Union. We vacated the Board's order and remanded the case, stating:

"However, without a right based upon contract or area practice, there may well be support for the Board's finding that the primary contractor was 'neutral' and the Union's conduct prohibited. Under these circumstances, we accordingly vacate the Board's present enforcement order and remand to the Board for further proceedings, to take evidence as to the contract rights existing and the area practice relating to the work assignment." 398 F.2d 11, 14.

The parties accepted our order as stating the law of the case. The Board directed a reopening of the case. An evidentiary hearing was held before a trial examiner in which all parties participated. The Examiner in his report states the issue before him to be "whether the Respondent has a supportable claim or right based upon contract or area practice that a carpenter should be included as a member of building construction crews engaged in the installation of precast concrete wall panels or other precast concrete fabrications in the Kansas City area."

The parties agree that the only relevant collective bargaining agreement is one entered into between the Builders' Association of Kansas City and the Union and that this agreement contains no provision which recognizes any right or claim on the part of the Union for the work here in controversy. The Examiner made fact findings as follows:

"With exceptions created by reason of occasional pressure by one union or another, the practice regarding the installation of precast concrete fabrications in the Kansas City area has been for the firms doing the installations to use the same crafts as compose their normal work crews. Thus, carpenters are used in the installation of

tilt-ups because these fabrications are made and installed on the job sites by the general contractors who normally employ carpenters. Other precast concrete fabrications are usually installed by heavy-haul or stone (masonry) subcontractors who customarily do not employ carpenters and, therefore, have not been using carpenters in their crews to do precast concrete installations.

"The work which is the subject of the dispute in this case involves the installation of precast concrete fabrications by masonry subcontractors and do not involve any tilt-ups. Contrary to Respondent, I find that there has been no established practice in the Kansas City area that a carpenter will be included in the crews of such subcontractors when they make precast concrete installations. The practice has been to the contrary, namely, for the most part, carpenters have not been included in crews which have done precast concrete installation work on a subcontract basis.

"Contrary to Respondent, I find that the evidence adduced at the hearing herein does not establish any 'right based upon contract or area practice' that a carpenter should be, or should have been, included in the crews employed by the masonry subcontractors to work on any of the three jobs which are the subject of the complaint in this case."

Upon the basis of such findings, the Examiner determined that the Union had no right based on contract or area practice to insist upon having a carpenter on the masonry installation crew and consequently the walk-off of the carpenters brought about by the Union constituted a secondary boycott in violation of § 8(b) (4) of the Act and recommended an appropriate order to remedy such unfair labor practice.

The Board, after consideration of the entire record, the trial examiner's findings and recommendations, the exceptions thereto and the briefs, adopted the findings, conclusions and recommendations of the examiner and reaffirmed its prior order. The Board in a footnote states:

"On the entire record, we conclude that the evidence is insufficient to support the Union's claim that carpenters customarily participated in the installation of either precast wall panels or other precast concrete fabrications in the Kansas City area. Accordingly, we reaffirm our previous Decision finding that the Union was engaged in activity constituting a secondary boycott in violation of Section 8(b) (4) (i) and (ii) (B) of the Act."

The Union concedes that there is no contractual basis for establishing their right to participate in the installation of the precast wall panels. The Union does insist, however, that they are entitled to participation in such work on the basis of area practice. This issue was fully considered and resolved against the Union by the Board. Thus the issue presented by this appeal is whether the Board's determination that no area practice existed for carpenters participating in the installation of concrete wall panels manufactured off the building premises and installed by a subcontractor is supported by substantial evidence under the standards established in Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

We hold that on the record as a whole the Board's findings are supported by substantial evidence and grant enforcement of the Board's order.

The use of precast concrete for the construction of buildings in the Kansas City area began about 1950. At the outset, such fabrications could not be purchased in the area so they were made on the jobsite by general contractors. The term "tilt-up" was used to describe such fabrications, the name deriving from the fact that these heavy fabrications were made near the place they were to be installed and tilted up into position. The descriptive word "tilt-up" applies to con-

crete fabrications made on the jobsite. The contractors used their regular crews in producing and installing such fabrications. When jurisdictional disputes arose, the work of aligning, leveling and placing the concrete fabrications was generally assigned to the carpenters.

In about 1957, a number of firms in the area began manufacturing concrete fabrications on their own premises. It then became the practice of such firms to enter into a subcontract with the building contractor to provide transportation and installation of the desired fabrications. The manufacturer in turn would subcontract the transportation and installation to heavy-haul contractors or stone-mason contractors. When such contractors entered into the fabrication and installation business, they continued to use their regular crews to perform all of their contractual obligations. Carpenters were not generally included in such crews.

Hutton, managing director of the Builders' Association of Kansas City, whose testimony was credited and given considerable weight by the Examiner, testified in regard to assignment of work: "A real clean line of demarcation [exists] between tilt-up work on the one hand, and other types of precast work, on the other." He further testified that of the four heavy-haul companies who are erecting precast columns and beams, three of them are using iron workers exclusively and that one of them is using carpenters in the crew on larger jobs.

Much of the testimony relied upon by the Union relates to the tilt-up work which the record fairly shows was performed by the general contractor's crew including carpenters.

It is clearly established that concrete wall panels and concrete fabrications here involved do not fall in the tilt-up category. The Union complains that the Board and its Examiner erroneously considered area work practices with respect to large concrete fabrications in general rather than confining the issue exclusively to concrete wall panels. We

find such contention lacks merit. The area practice appears to be the same with respect to all heavy concrete fabrications.

We observe that the Union is not directly attacking the right of the general contractor to subcontract the wall panel work. The Union in its brief states: "The only dispute concerns the installation of precast concrete wall panels after they are fabricated and after they are at the job site."

In distinguishing the present case from National Labor Relations Board v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284, the Union states: "There was no dispute whether the fabrication of the precast wall panels would be done on or off the job site; the only dispute concerned the installation of the wall panels on the job site after they were fabricated." It is of some significance that there is no contract provision against subcontracting the precast work and the installation thereof or evidence of any bargaining to retain or recapture such claimed traditional work. The general contractor by legally subcontracting the precast fabrications has placed it beyond his power to control the make up of the subcontractor's employees. Moreover, the record reflects a general area practice to handle the manufacture, transportation and installation of heavy concrete fabrications by means of subcontracts.

We have not set out nor discussed the voluminous evidence in detail. We have carefully examined the record and find that the Board in compliance with our remanding decision and mandate has held a proper hearing upon the contractual and area practice issues. We find substantial evidence supports the Board's determination that the Union's action of calling a strike against the general contractor cannot be justified upon the basis that the Union had a right to the work in controversy derived from either its contract or the area practice.

Thus the Board properly determined that the Union by calling the strike against the general contractor with the object of getting him to cease doing business with the masonry contractor was a violation of § 8(b) (4) (i) and (ii) (B). See National Labor Relations Board v. Local 825, International Union of Operating Engineers, 400 U.S. 297, 91 S.Ct. 402, 27 L.Ed.2d 398.

The Board's order will be enforced. Relief sought by the Union's petition for review is denied.